**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTINA HAMEDALLAH o/b/o E.B.,**

                                              **Plaintiff,**

         **vs.**                                                    **3:11-CV-939**
                                                                    **(MAD)**

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security,**

                                              **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

OFFICE OF STEPHEN J. MASTAITIS, JR.           Stephen J. Mastaitis , Jr.
1412 Route 9P
Saratoga Springs, New York 12866
_Attorneys for Plaintiff_

Social Security Administration                 Maria P. Fragassi Santangelo, Esq.
Office of Regional General Counsel            Noah M. Schabacker, Esq.
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
_Attorneys for Defendant_

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Plaintiff Christina Hamedallah brings the above-captioned action on behalf of her minor

daughter, E.B., pursuant to 42 U.S.C. §§ 405(g) of the Social Security Act, seeking a review of

the Commissioner of Social Security's decision to deny E.B.'s application for supplemental

security income ("SSI").

**PROCEDURAL BACKGROUND**

On August 8, 2008, plaintiff filed an application on E.B.'s behalf for Supplemental Security Income ("SSI"). (Administrative Transcript at p.63).[1]  Plaintiff was 5 years old at the time of the application and allegedly suffered from mental retardation.  On February 23, 2009, E.B.'s application was denied and plaintiff requested a hearing by an ALJ which was held on November 16, 2010.  (T. 69, 132).  On January 21, 2011, the ALJ issued a decision denying E.B.'s claim for benefits.  (T. 12-28).  The Appeals Council denied plaintiff's request for review on June 13, 2011, making the ALJ's decision the final determination of the Commissioner. (T. 1-4).  This action followed..

**FACTS**

**I.     Medical Records**

The medical record establishes that E.B. suffered a traumatic brain injury as a result of an in utero stroke.  On June 12, 2003, when E.B. was nine days old, she treated was at Schenectady Family Health Services and diagnosed with seizure disorder.  In April 2004, E.B. was hospitalized for seizures and at her fifteen month well child visit, the doctors diagnosed E.B. with seizure disorder and developmental delay.  (T. 478).  The doctors referred E.B. to a pediatric neurologist.[2]   In December 2004, at her eighteen month well child visit, the doctors noted that E.B. was taking Phenobarbital for her seizures.[3] (T. 479).  In April 2005, the doctors concluded that E.B.'s seizures were related to fevers. (T. 461).  In June 2005, at her two year well-child visit,

---

[1]  "(T. )" refers to pages of the administrative transcript, Dkt. No. 10.

[2]  The record does not contain any records from any pediatric neurologist or any other specialist.

[3]  Phenobarbital is used to control seizures and relieve anxiety. Phenobarbital is in a class of medications called barbiturates. It works by slowing activity in the brain. *See* http://www.ncbi.nlm.nih.gov (Last visited June 15, 2012).

the doctors noted that E.B. suffered from speech delays and indicated that E.B. was receiving speech therapy. (T. 473).  In September 2005, E.B. was evaluated after experiencing additional seizures.  The doctors noted that she was also being treated at Albany Medical Center.  In December 2005, the doctors indicated that E.B. was no longer taking seizure medication.

In April 2006, E.B. had a three year well child visit at Hometown Health Center.  The doctors noted that she had been "off seizure meds since 12/05".  E.B.'s speech was unintelligible, she was not potty trained and was receiving speech and occupational therapy at school.  In August 2007, at E.B.'s five year well child visit at Hometown H.C., the doctors noted that E.B. suffered from seizure disorder and developmental delays. (T. 564).

On April 10, 2008, during a visit at Hometown Health Centers, plaintiff complained that E.B. exhibited disruptive behavior after a visit with her biological father.  Plaintiff claimed the E.B.'s father alleged "odd behavior with an eight year old girl" and that E.B. went "under covers with a boy".  The doctor noted, "suspected sexual abuse by father", "history concerning". (T. 541).  The doctor gave plaintiff the telephone number for "peds assault" and noted that plaintiff was comfortable with plan and indicated that E.B. would not be alone with father. (T. 541).

On August 22, 2008, E.B. was seen for a 5 year well-child visit.  Plaintiff stated that E.B. had been exhibiting behavioral problems once a month consisting of urinating, breath holding, tantrums and smearing feces.  The doctor noted that plaintiff behaved well with teachers and at summer camps.  The doctor also noted that plaintiff had not experienced any seizures for the last four years.  The doctor referred plaintiff and E.B. for family counseling. (T. 413).

On September 8, 2008, E.B. was assessed at Northeast Parent and Child Society, Child Guidance Center by Mary Baker, LMHC and Ms. Baker's supervisor, Karen Nabors, LCSW. Plaintiff complained that E.B. was defiant with a history of distress in utero with developmental

delays and slow speech.  Plaintiff also complained that E.B. was difficult with her peers and inattentive.  The evaluators noted that E.B. had visits with her father but that there was a history of domestic violence between her mother and father and that her mother was verbally abusive towards E.B.  (T. 430).  The evaluators also noted that E.B.'s stepfather provided well-needed structure.  At the time of the examination, E.B. was receiving occupational and speech therapy services.  The evaluators noted that more information was necessary to determine whether E.B. met the criteria for ADHD.  E.B. was diagnosed with cognitive delays and environmental influences which "greatly impeded her self-organization and social development", oppositional defiance disorder and noted as "extremely disorganized".  Ms. Baker opined that E.B.'s problems would improve if her parents provided structure and expectations.

On January 6, 2009, Seth Rigberg, Ph.D. evaluated E.B. at the request of the agency. Plaintiff advised that E.B. was learning disabled with behavioral problems and indicated that E.B. received services at school consisting of occupational therapy, speech therapy and physical therapy.   Plaintiff stated that E.B. loses her temper and becomes physical but otherwise is a happy child who does what she is told and pays attention.  Upon examination, Dr. Rigberg noted that E.B. was cooperative, she had mild to moderate articulation problems and her judgment was poor.  Dr. Rigberg diagnosed E.B. with phonological disorder[4], parent-child relational problems and mild mental retardation.  In his medical source statement, Dr. Rigberg opined that E.B. had trouble attending to and following directions and tasks and some trouble with social behavior. The doctor noted that E.B. was a slow learner who was aware of danger but had trouble interacting with others.  (T. 423).  Dr. Rigberg conducted a Wechsler IQ evaluation and found

---

[4] Phonological disorder is a type of speech disorder known as an articulation disorder. Children with phonological disorder do not use some or all of the speech sounds expected for their age group. *See* http://www.ncbi.nlm.nih.gov (Last visited June 15, 2012).

E.B.'s verbal IQ was 67; performance IQ was 65 and her full IQ was 67.  This was noted in the "deficient range".

On February 20, 2009, A. Herrick completed a Childhood Disability Form at the request of the agency.[5]  Herrick noted that E.B. suffered from "M.R. - mild, phonological disorder, parent-child problems".  Herrick concluded that E.B.'s impairments did not meet any listed impairments and analyzed the functional domains.  Specifically, Herrick opined that E.B. displayed "marked" limitations in the domain of acquiring and using information.  Herrick opined that E.B.'s limitations were less than marked in all remaining domains with the exception of "health and well-being" where she displayed no limitations.  (T. 445).

On March 18, 2009, E.B. was seen at Hometown Health Center.  The doctor noted that E.B.'s last seizure was one to two years prior.  At the time of the visit, E.B. was not being treated by a pediatric neurologist and was no longer taking any medication for her seizures.  Plaintiff stated that E.B. last took medication for seizures two to three years ago.

On April 2, 2009, E.B. underwent a CT scan at Albany Medical Center which was compared to a prior MRI taken in September 2003.[6]  The scan revealed a small area of tissue loss in the left opercular region related to an old infarct. (T. 411).

On January 19, 2010, E.B. had a six year well child visit. A Department of Health check up indicated that E.B. was accompanied by her foster mother with whom E.B. had been living since December 2009.  The doctor noted that she was doing well since being removed from her home due to domestic violence and plaintiff's refusal to leave.  E.B. exhibited no behavior

---

[5] A. Herrick is noted as a specialist in psychology but his/her credentials are not part of the record herein.

[6] The September 2003 MRI report is not part of the record herein.

problems, was a good eater and good with social interactions.  E.B. had supervised visits with her biological father and the doctor indicated that she received special education services. (T. 562).

On July 28, 2010, E.B. was examined at Ellis Hospital Mental Health Services. (T. 481). Upon mental examination, E.B. exhibited slow speech, anxious mood and affect, her thought process was coherent and goal directed.  E.B.'s judgment and impulse control were fair and it was noted that she had only mild impairments.  E.B. was diagnosed with anxiety disorder.

On October 19, 2010, Ms. Baker authored a letter addressed "To Whom It May Concern" stating that she treated E.B. for two years and "observed that she is unfocused".   Ms. Baker opined that E.B. has significant inattention and distractibility that interferes with her learning and further, that she is oppositional at home.  (T. 573).

## II.    School Records

In March 2008, an IEP was prepared for the 2008/2009 school year.  E.B.'s disability classification was noted as "traumatic brain injury".  The evaluators noted that she required adult supervision to navigate her relationships with her peers, her impulsivity decreased and her attentiveness was increased but she had difficulties with directions.  E.B. would "shut down" and was easily distracted. (T. 208).

On October 15, 2008, E.B.'s special education teacher, Sheila McPherson completed a Teacher Questionnaire.  At the time she completed the questionnaire, Ms. McPherson knew E.B. for two and a half months. (T. 349).   Ms. McPherson opined that E.B. exhibited obvious to serious problems in some areas of acquiring and using information.  Specifically, E.B. required support to follow directions.  E.B. also displayed slight to obvious problems in some areas of attention and concentration and was easily distracted.  Ms. McPherson concluded that E.B. had serious problems relating and expressing herself and that her language impacted her social

6

functioning.  E.B. had obvious problems moving and manipulating objects and required occupational therapy and slight problems caring for herself.

On November 10, 2008, E.B.'s kindergarten teacher completed a Teacher Questionnaire.  Ms. Cutty indicated that she knew E.B. for two months at the time she prepared the evaluation.  The teacher opined that E.B. had serious problems with acquiring and using information, specifically with reading and comprehension and expressing ideas.  E.B. also exhibited slight to obvious problems daily with attending and completing tasks and slight to obvious problems interacting and relating with others.  No behavior modification was necessary and the teacher was able to understand E.B.'s speech.  E.B. had no limitations moving and manipulating objects and only slight difficulties caring for herself.  (T. 362).

On April 21, 2009, Ms. McPherson completed a second Teacher's Questionnaire and indicated that she knew E.B. for seven months.  Ms. McPherson noted that E.B. was in an "inclusion class" and required support to be independent.  E.B. had difficulties focusing in large groups and required a behavior management plan.  E.B. received occupational therapy and was "shut down" on occasion.

On September 28, 2010, Gregory Osenko completed a Psycho-Educational Report for the Schenectady City School District.  Mr. Osenko noted that E.B. suffered a traumatic brain injury due to a stroke in utero.  As a result, E.B. suffered brain damage and her ability to control her impulses and judgment was impaired.  E.B. received special education services at school with speech and language therapy.  (T. 505).  Mr. Osenko noted that E.B.'s intellectual functioning was in the "borderline range" with difficulties in the verbal comprehension and perceptual reasoning index.  E.B.'s capacity to process information was in the "average range" and her capacity to remember information was in the "low average range".  (T. 503).

7

On October 15, 2010, the Committee on Special Education held a transfer meeting with respect to E.B.'s 2010-2011 IEP.  The Committee noted that E.B. made a "nice adjustment" to second grade at a new school.  She was noted as, "sweet, talkative, outgoing" and "a pleasure to have in class".  E.B. was able to work independently and in small groups and her abilities were noted as "slightly below grade level".  E.B. had difficulties with vocabulary skills and some "speech sound errors" however, these deficiencies did not impact her intelligibility.  However, her difficulties affected her ability to understand and follow multi-step directions. E.B. was noted as "attentive in the Resource Room" and "excelled in all areas".  E.B. was "age appropriate" with no displays of negative behavior.  She made friends easily and assisted her peers with tasks.  Physical therapy was not needed as E.B. was able to function independently in a safe manner.  E.B. still required adult support to "stay on task" and focused in a large classroom.  It was recommended that E.B. attend the Resource Room five times a week and that she continue to receive speech therapy two to three times a week and social counseling once a week.  (T. 575).

## DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."  An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he

> has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).  That definitional provision goes on to exclude from coverage any "individual under the age of 18 who engages in substantial gainful activity. . . ."  42 U.S.C. § 1382c(a)(3)(C)(ii).

8

> Regulations enacted by the Social Security Administration set forth a three-step analysis for evaluating whether a child's impairment meets this definition of disability: First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." Id. § 416.924©. Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or, as is most pertinent here, "functionally equals" a disability listed in the regulatory "Listing of Impairments." Id. § 416.924(c)–(d).

*Miller v. Comm'r of Soc. Sec.*, 409 F. App'x 384, 386 (2d Cir. 2010).

Equivalence to a Listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp.2d 479, 488 (E.D.N.Y. 2003). If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability, and the twelve month durational requirement is satisfied, the child will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *see also Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004).

Under the Social Security Regulations (the "Regulations"), analysis of functionality is performed by consideration of how a claimant functions in six areas which are denominated as "domains," and described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those prescribed domains include:

> (i) [a]cquiring and using information;
> (ii) [a]ttending and completing tasks;
> (iii) [i]nteracting and relating with others;
> (iv) [m]oving about and manipulating objects;
> (v) [c]aring for [oneself]; and
> (vi) [h]ealth and physical well-being.

20 C.F.R. § 416.926a(b)(1). A finding of disability is warranted if a "marked" limitation, defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(i), is found in two of the listed domains. 20 C.F.R. § 416.926a(a). Functional equivalence also exists in the event of a

finding of an "extreme" limitation, meaning "more than marked," representing an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," and this rating is only "give[n] to the worst limitations".  20 C.F.R. § 416.926a(e)(3)(i); *see also Pollard*, 377 F.3d at 190.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  The ALJ must set forth the crucial factors supporting the decision with sufficient specificity.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Using the three-step disability evaluation, the ALJ found at step one that E.B. has never engaged in any substantial gainful activity. (T. 15).  At step two, the ALJ concluded that E.B. had severe impairments consisting of: traumatic brain injury at birth; history of seizure disorder; cognitive delays; borderline intellectual functioning vs. mild mental retardation, phonological disorder; parent-child relational problem; and anxiety disorder. (T. 15).  At the third step of the analysis, the ALJ found that none of E.B.'s severe impairments meet, medically equal, or functionally equal any of the listed, presumptively disabling conditions set forth in Appendix 1 of the Regulations.  (T. 16).  The ALJ evaluated E.B.'s functional abilities in the six domains

established by 20 C.F.R. § 416.926a(b)(1) and found that E.B.'s limitations were "less than marked" in all six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for herself; and health and physical well-being. (T. 20-26) .  Consequently, the ALJ concluded that E.B. was not disabled.  (T. 27).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ erred when he failed to assign controlling weight to the opinion of Seth Rigberg, Ph.D; (2) the ALJ erred when he failed to find that E.B.'s impairments meet or equal a listed impairment; (3) the ALJ erred by failing to find that E.B.'s impairments are functionally equivalent to the Listings.; and (4) the ALJ improperly evaluated plaintiff's mother's and stepfather's credibility.  (Dkt. No. 13).

Initially, the Court is compelled to address the inadequacies of plaintiff's Memorandum of Law and arguments.  Cohesive arguments, attention to detail and appropriate citations are always required.  That requirement is particularly important when representing a minor.  As the Court is compelled to conduct a *de novo* review, the Court will analyze the ALJ's assessments of the Listings and Functional Domains as well as his evaluation of the opinion evidence and credibility.[7]

## I.    Listed Impairments

Plaintiff claims that E.B. meets the following listed impairments: 112.05D and 112.05E.2. By regulation, the Commissioner has set forth a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected.   20 C.F.R. Pt.

---

[7] The Court also notes that plaintiff's counsel listed "Hon. Glenn T. Suddaby" as the United States Attorney representing defendant in this action.  Plaintiff's brief was filed on February 16, 2012, the Honorable Glenn T. Suddaby was sworn in as United States District Court Judge on August 29, 2008.

404, Subpt. P, App. 1; *Lusher ex rel. Justice v. Comm'r of Soc. Sec.*, 2008 WL 2242652, at *6 (N.D.N.Y. 2008).  For both adults and children, "if an applicant satisfied the Listings, the applicant was presumed to be disabled, and did not have to prove 'whether he [or she] actually can perform his [or her] own prior work or other work.'" *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 529-530 (1990)).

The Commissioner's determination as to whether the claimant's impairment meets or equals the Listings must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, including any functional limitations that result from the impairment, with the corresponding criteria shown for the listed impairment. 20 C.F.R. §§ 416.925, 416.926a; *see also Giles v. Chater*, 1996 WL 116188, at *5-6 (W.D.N.Y. 1996).  Where the claimant's symptoms, as described by the medical evidence, appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings. *Booker v. Heckler*, 1984 WL 622, at *3 (S.D.N.Y. 1984).  When evaluating a claimant's impairments, the ALJ must refer to the specific criteria set forth in the Listing. *Morales v. Barnhart*, 218 F.Supp.2d 450, 459-60 (S.D.N.Y. 2002).  Mere recitation of the medical evidence is insufficient unless the reports referred to contain substantiated conclusions concerning the Listings, and the ALJ expressly adopts the reasoning of those conclusions. *Id*.  The ALJ (not the Commissioner's lawyers) must "build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review". *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citations omitted).  A court "cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Morgan on Behalf of Morgan v. Chater*, 913

F.Supp.184, 188 -189 (W.D.N.Y. 1996) (quoting *Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir. 1985)).

An ALJ has a legal duty to consider "all evidence" in the case record before making a determination as to whether a claimant is eligible for disability benefits.  20 C.F.R. § 416.920(a)(3); *see Sutherland v. Barnhart*, 322 F.Supp.2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence as supports his determination, without affording consideration to evidence supporting the plaintiff's claims. It is grounds for remand for the ALJ to ignore parts of the record that are probative of the plaintiff's disability claim."); *see also Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150-51 (2d Cir.1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him.").  The ALJ must provide adequate explanations with regard to § 112.05 including a discussion of whether claimant has an impairment or combination of impairments that meets or medically equals § 112.05 of the Listings.  Setting forth a single sentence is insufficient.  *Martinbeault v. Astrue*,  2009 WL 5030789, at *6 (N.D.N.Y. 2009) (on remand, the ALJ should consider and provide a detailed statement of reasons as whether the IQ test scores, combined with the ADHD and adjustment disorder (which were already found to be severe), meet or medically equal § 112.05(D) of the Listings).

Listing § 112.05 involves mental retardation which is, "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05.  To meet or equal Listing 112.05, for children of claimant's age, claimant must demonstrate:

D.      A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.

To meet the requirements of 112.05D, a claimant must establish a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App. 1. To satisfy the second prong, the claimant must demonstrate that an impairment or combination of impairments, separate and distinct from a low IQ, imposes more than a slight or minimal limitation on the claimant's functioning.  *Williams v. Astrue*, 2008 WL 4755348, at *10 (S.D.N.Y. 2008).

To meet Listing 112.05E, the claimant must exhibit:

E. A valid verbal, performance, or full scale IQ of 60 through 70 and:

2. For children (age 3 to attainment of age 18), resulting in at least one of paragraphs B2b or B2c or B2d of 112.02.[8]

---

[8] B. Select the appropriate age group to evaluate the severity of the impairment:

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 CFR Pt. 404, Subpt. P, App. 1.

20 CFR Pt. 404, Subpt. P, App. 1.

In this case, the ALJ specifically discussed Listing 112.05D and found that plaintiff did not meet or equal any of the listing.  The ALJ concluded that while plaintiff had a valid verbal, performance or full scale IQ of 60 through 70, "the undersigned finds that the evidence fails to show that she has a physical or other mental impairment imposing additional and significant limitation of functioning as is also required in the listing".  (T. 15)

Plaintiff argues that E.B. meets Listing 112.05D because , "the child's (remarkably consistent) IQ scores of 65/67 and concurrent severe mental and physical impairments meet the criteria".  Plaintiff also summarily states that E.B. meets 112.05E.2 because she, "has a marked impairment in age appropriate cognitive/communicative functioning".  Plaintiff argues that Dr. Rigberg's examination and E.B. teacher evaluations support this assertion.

The Commissioner argues that E.B. does not meet either Listing because WISC-IV IQ testing established that E.B. had a full scale IQ score of 78.  Moreover, defendant claims that to the extent that there are conflicting IQ scores in the record, the ALJ must resolve such conflicts. The Court rejects this argument.  A reviewing court "may not accept appellate counsel's *post hoc* rationalizations for agency action." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (refusing to accept Commissioner's *post hoc* explanation for weight given to treating physician).  Subsequent arguments by the Commissioner detailing the substantial evidence supporting the ALJ's decision are not a proper substitute for the ALJ engaging in the same evaluation. *Peralta v. Barnhart*, 2005 WL 1527669, at *10 (E.D.N.Y. 2005) (the Commissioner's explanation of the ALJ's rationale is not a substitute for the ALJ providing good reasons in his decision for the weight given to treating physician's opinions).  Here, the ALJ specifically found that plaintiff met the first prong of 112.05 and concluded that plaintiff has a valid verbal, performance, or full scale IQ

of 60 through 70, as set forth in the listing.  The ALJ did not find any conflict in the record and thus, the Court rejects defendant's argument.

With respect to the second prong of 112.05D, the Court has reviewed the administrative record and finds that the ALJ's determination is not supported by substantial evidence.  "There is authority in this Circuit for the proposition" that where the ALJ concludes that there are additional impairments that are "severe" under § 416.924( c), "then the claimant meets the prong two requirement of 112.05D".  *Juckett ex rel. K.J. v. Astrue*, 2011 WL 4056053, at *7 -8 (N.D.N.Y. 2011) (citations omitted) (collecting cases); *see also Vazquez ex rel. Jorge v. Barnhart,* 2005 WL 2429488, at *7 (S.D.N.Y. 2005); *see also Edmond v. Barnhart*, 2006 WL 2769922, at *7 -9  (W.D.N.Y. 2006) (a "severe" impairment is considered to be the equivalent of a "significant" limitation for the purposes of Listing § 112.05D).

Here, at Step Two of the sequential analysis, the ALJ found that E.B. suffered from several "severe" impairments.  Even if this Court declines to adopt the view that a "severe impairment" is necessarily construed as a "significant" impairment, the ALJ's analysis is nonetheless flawed.  The ALJ failed to discuss, or even address, whether E.B.'s severe impairments created a mental impairment imposing an additional and significant work-related limitation of function under § 112.05D.   Despite the ALJ's conclusion at Step Two, that plaintiff suffered from several severe impairments, including a traumatic brain injury at birth, history of seizure disorder, cognitive delays, borderline intellectual functioning, phonological disorder, parent-child relational problems and anxiety disorder, the ALJ did not address the impact, if any, that these "severe impairments" had on the determination that plaintiff did not meet any criteria of § 112.05D.  *See Cruz ex rel. Vega v. Barnhart*, 2005 WL 2010152, at *12 (S.D.N.Y. 2005) (the ALJ's determination that the plaintiff had four severe impairments, a determination supported by

16

the available evidence, is tantamount to a finding that each of these impairments satisfies the second prong of Listing 112.05).  The ALJ provided a one-sentence, conclusory analysis without any recitation of the facts or medical evidence.  The ALJ's failure to explain the conclusion is plain error. *See Morgan o/b/o Morgan v. Chater*, 913 F.Supp. 184, 188-189 (N.D.N.Y. 1996) (holding that a one-sentence denial is insufficient to support the determination, especially in light of the evidence to the contrary).  In this matter, the ALJ failed to provide an analysis of plaintiff's impairments sufficient to enable this Court to conclude that the ALJ's finding is supported by substantial evidence.

The Court will not engage in a discussion which is a task properly left to the Commissioner, however, given the similarities between E.B.'s impairments/symptoms and the criteria of Listing § 112.05, the ALJ should have given some explanation as to why the impairment(s) do(es) not meet the criteria.

Upon remand, the ALJ must address this issue and if the ALJ determines that E.B's impairments do not satisfy § 112.05D, the record should be more fully developed, and the decision should explain why claimant's IQ scores—in conjunction with her traumatic brain injury, history of seizure disorder, cognitive disorder, borderline intellectual functioning, phonological disorder, parent-child relational problems and anxiety disorder—do not meet the listing for mental retardation under § 112.05D.  *See Hall ex rel. Lee v. Apfel,* 122 F.Supp.2d 959, 967 (N.D.Ill. 2000).

Moreover, the Court finds that the ALJ's failure to mention or discuss Listing 112.05E necessitates remand.  The ALJ failed to discuss whether or not claimant's impairments met the specific requirements of §112.05E of the Listings.  Upon a review of the record, the Court finds that the ALJ made conclusory findings and failed to apply the appropriate legal standard. The

Second Circuit has held that, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987).  On remand, the ALJ should specifically address whether E.B.'s impairments meet §112.05E of the Listings and further, should specifically address the factors listed in § 112.02B. The ALJ should have provided some explanation as to why claimant's impairments do not meet the criteria of the specified listings and should have discussed the applicable paragraphs of § 112.02B.

In light of the ALJ's failure to provide a sufficient rationale, the Court is unable to conclude that the ALJ's finding that E.B. fails to meet or medically equal a listed impairment is supported by substantial evidence.  Upon remand, the ALJ should consider the evidence and determine whether plaintiff meets any of the aforementioned subsections of 112.05.

## II.     Functional Domains

As discussed *supra*, the ALJ must analyze whether claimant has an impairment or combination of impairments that functionally equals a Listing based upon an analysis of six domains:  (1) attending and completing tasks; (2) acquiring and using information; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  Plaintiff briefly and vaguely asserts that E.B. suffers from an extreme/marked limitation in all six domains.  Plaintiff provides only conclusory assertions with regard to E.B.'s impairments in the first three domains with minimal citations to the record.  Plaintiff fails to provide any coherent argument in support of her claim that the ALJ erred with respect to the final three domains. (Dkt. No. 13).

The Regulations define an extreme limitation as:

> an "extreme" limitation . . .interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

> (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have an "extreme" limitation when you have a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(3)(i); § 416.926a(e)(3)(iii).

The Regulations define a marked limitation as:

> (i) . . . an impairment(s) [that] interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

> (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(i); § 416.926a(e)(2)(iii).

**A.     Acquiring and Using Information**

In assessing this domain, the ALJ must consider how well a child acquires or learns information, and how well he can use the information she has learned. *Edmond v. Barnhart*, 2006 WL 2769922, at *9 (W.D.N.Y. 2006).  For children E.B.'s age, the Regulations provide:

> Preschool children (age 3 to attainment of age 6). When you are old enough to go to preschool or kindergarten, you should begin to learn and use the skills that will help you to read and write and do arithmetic when you are older. For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what you mean, and tell stories allows you to acquire and share knowledge and experience of the world around you. All of these are called "readiness skills," and you should have them by the time you begin first grade.

20 C.F.R. § 416.926a(g)(2)(iii).

An analysis of this domain should include school records including non-medical evidence provided by a teacher, who works with a child on a daily basis and observes her in a social setting with peers as well as adults.  *Edmond,* 2006 WL 2769922 at *10 (holding that the ALJ erred by not considering the report of the claimant's teacher in making a determination on the domain of acquiring and using information) (citing *Matthews o/b/o Dixon v. Barnhart*, 339 F.Supp.2d 1286, 1290, n.8 (N.D. Ala. 2004)); *see also Jones ex rel. SA v. Astrue*, 2009 WL 1924763, at *6 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1513(d)(2)(e)).

Here, the ALJ found that plaintiff had a "less than marked" limitation in this domain. (T. 20). The ALJ concluded:

> The domain of acquiring and using information appears to be the most troublesome domain for the claimant, but the evidence fails to show that the claimant has marked limitations in this domain or any other domain.  Teacher Questionnaires fail to support a finding of marked limitations.  She is in a classroom with 20 children and one teacher.  A special education teacher comes into the classroom for two hours to assist the claimant.  The claimant is not in any treatment.  (T. 17).

20

The ALJ relied upon E.B.'s 2008-2009 IEP which indicated that she made progress in speech and language development.  (T. 20).  The ALJ also discussed plaintiff's teachers' opinions but found their opinions inconsistent and noted that in 2009, E.B. developed "better functioning in this domain".

Upon review of the record, the Court finds that substantial evidence does not support the ALJ's conclusion for various reasons.  Arguably, there is some evidence that E.B.'s functioning improved in this domain, however, the ALJ failed to discuss critical portions of the record and failed to properly analyze the medical evidence.  Specifically, the record contains a copy of E.B.'s 2010-2011 IEP.  The ALJ failed to mention, discuss or analyze this evaluation.  As a result of the 2010-2011 IEP review, E.B.'s services were modified.  The Committee recommended that E.B. no longer receive special education services, rather, she was referred to the Resource Room five times a week.  However, it was recommended that E.B. continue to receive speech therapy and social counseling.  While these adjustments to E.B.'s services may support the ALJ's finding that E.B. does not display a "marked" limitation in this area of functioning, the ALJ ignored the 2010-2011 IEP and failed to discuss the recommendations in any respect.  Further, "good performance in a special education setting does not mean that [a child is] functioning at the same level as other children [his] age who do not have impairments".  *F.M. v. Astrue*, 2009 WL 2242134, at *9 (E.D.N.Y.2009) (holding that the claimant was "the beneficiary of the devoted efforts of teachers", but that fact was insufficient to support a finding that his limitations were not marked) (citing 20 C.F.R. 416.924a(b)(7)(iv)).  A finding of "less than marked" is unsupported by substantial evidence when the ALJ fails to consider that the child's improvements in behavior occurred only in the structured special education setting).  *Gonzalez*, 2009 WL 4724716, at *6.  As stated, this Court will not engage in an analysis that is more appropriately performed by the ALJ.

The ALJ also failed to discuss A. Herrick's opinion with respect to this domain.  A. Herrick, an alleged specialist in psychology, evaluated E.B.'s records and opined that she displayed a "marked" limitation in this domain.  The ALJ failed to mention this opinion, assign weight to this opinion, or specifically reject this opinion.  Indeed, the Court is unable to ascertain what evidence that ALJ relied upon because he failed to assign any weight to any consultative opinion, treating physician opinion, treatment notes or records. The ALJ specifically assigned "great weight" to the school records and teacher questionnaires but failed to assign any weight to the medical evidence.  *Babcock v. Barnhart*, 412 F.Supp.2d 274, 281–283 (W.D.N.Y. 2006) (citing *Torregrosa v. Barnhart*, 2004 WL 1905371, at *6 (E.D.N.Y. 2004) (finding that in the absence of a treating source's opinion, there is more reason for the ALJ to discuss the opinions of the examining doctors and to explain the weight afforded to those opinions)).  The Court rejects plaintiff's contention that the ALJ erred when he failed to assign controlling weight to Dr. Rigberg's opinions because the treating physician rule does not apply to consulting doctors.  *See Jones v. Shalala*, 900 F.Supp. 663, 669 (S.D.N.Y.1995); *see also Limpert v. Apfel*, 1998 WL 812569, at *6 (E.D.N.Y.1998).  However, the Regulations require an ALJ to "evaluate every medical opinion" and in this regard, the ALJ neglected this duty.  20 C.F.R. § 416.927(d); § 416.927(a)(2).

Because the ALJ failed to assign weight or to explain the weight he afforded to any conclusions or opinions, the Court is constrained to find that his conclusions are supported by substantial evidence.  Accordingly, on remand, the ALJ should discuss and analyze claimant's medical records, E.B.'s 2010-2011 IEP and may consider obtaining testimony from individuals concerning claimant's abilities outside of her special education setting.  *See Martinbeault*, 2009 WL 5030789, at *7–8.

**B**.     **Attending and Completing Tasks**

The domain of attending and completing tasks gauges how well a child is able to focus and maintain attention.  20 C.F.R. § 416.926a(h).  For children of E.B.'s age (age 3 to age 6), the regulations provide:

> Preschool children (age 3 to attainment of age 6). As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys. You should usually be able to wait your turn and to change your activity when a caregiver or teacher says it is time to do something else.

20 C.F.R. § 416.926a(h)(2)(iii).

Some examples of limited functioning include: (1) being "easily startled, distracted, or over reactive to sounds, sights, movements, or touch"; (2) "being slow to focus on, or fail to complete activities of interest"; (3) becoming repeatedly sidetracked from activities or frequently interrupting others; and (4) being easily frustrated and giving up on tasks.  *See* 20 C.F.R. § 416.926a(h)(3)(i)-(v); *see also Morgan*, 2005 WL 925594, at *13.

Here, the ALJ found that plaintiff had a "less than marked" limitation in this domain. (T. 21).  The ALJ discussed E.B.'s IEP noting:

> the claimant "continues to be highly distractable during group activities.  It notes that she needs multiple prompts to remain focused during circle time activities".  It notes that she "often needs directions repeated and/or broken down with reminders to slow down".  It also notes that she "demonstrates a high level of impulsivity in the classroom."  It further reports that she "demonstrates a high level of impulsivity in the classroom".  It further reports that the claimant "shuts down" for long periods of time when tasks appear difficult or she does not want to do them.  Yet the IEP also notes that her "attention to structured tasks has improved and her impulsivity has noticeably decreased".  (T. 22).

The ALJ also discussed the teacher questionnaires noting that E.B. displayed "slight" to "obvious" problems in areas of this domain.  However, the ALJ relied upon the lack of any documented diagnosis of ADHD and lack of any medication to treat ADHD as a basis for his conclusion that E.B. has "only a less than marked limitation in this domain".

The ALJ ignored plaintiff's special educations teacher's observations regarding plaintiff's "daily/obvious problems" completing work.  All of E.B.'s teachers opined that she exhibits "daily/obvious problems" working without distracting others and paying attention and is "easily distracted" and has difficulty focusing.  E.B.'s teachers unanimously opined that E.B. "shuts down" when she disagrees with adults or refused to obey instructions.  Plaintiff also testified that E.B. displays these tendencies.  The ALJ ignored Ms. Baker's opinion that E.B. was "extremely disorganized".  Instead, the ALJ relied upon the lack of any evidence or diagnosis of ADHD. Again, the Court notes that the 2010-2011 IEP may provide some support for the conclusion that E.B. improved in this area.  The Committee noted that E.B. was "very attentive" while in the Resource Room.  However, as noted above, because the ALJ failed to properly apply the regulations with respect to the medical evidence, the Court cannot find that the conclusions with respect to this domain are supported by substantial evidence.  Upon remand, the ALJ should consider the Regulations and assign and explain the weight afforded to all of the opinion evidence.  The ALJ must analyze the entire record and support his decision with evidence in the record rather than the absence of a specific diagnosis.

**C.     Interacting and Relating to Others**

Plaintiff contends that the ALJ erred by failing to find that E.B. has an extreme or marked impairment in the domain of interacting and relating to others.  The domain of interacting and relating with others considers how well the child initiates and sustains emotional connections with

others, develops and uses the language of his community, cooperates with others, complies with

rules, responds to criticism, and respects and takes care of the possessions of others.  20 C.F.R. §

416.926a(i).  For school-age children of E.B.'s age (age 3 to attainment of age 6), the Regulations

further provide:

> Preschool children (age 3 to attainment of age 6). At this age,
> you should be able to socialize with children as well as adults.
> You should begin to prefer playmates your own age and start
> to develop friendships with children who are your age. You
> should be able to use words instead of actions to express
> yourself, and also be better able to share, show affection, and
> offer to help. You should be able to relate to caregivers with
> increasing independence, choose your own friends, and play
> cooperatively with other children, one-at-a-time or in a group,
> without continual adult supervision. You should be able to
> initiate and participate in conversations, using increasingly
> complex vocabulary and grammar, and speaking clearly
> enough that both familiar and unfamiliar listeners can
> understand what you say most of the time.

20 C.F.R. § 416.926a(i)(2)(iii).

Here the ALJ found that plaintiff has less than marked limitations in this area. (T. 23).

The ALJ relied upon the 2008-2009 IEP and the lack of any treatment, despite the diagnosis, for

oppositional defiance disorder.  (T. 23).  The ALJ noted that E.B. participated and responded well

in a classroom behavioral management plan and plaintiff indicated that she had never been called

to school for any disciplinary problems at school.  Moreover, the teacher questionnaires lack any

reference to any "serious problems" in this domain.  In addition to the evidence cited by the ALJ,

the 2010-2011 IEP supports his decision as the Committee found that E.B. was a happy child and

identified E.B. as a "role model" in the classroom.  E.B. developed friendships and was helpful to

her peers when they struggled with tasks.  (T. 577).  Upon review of the record, the Court

concludes that substantial evidence supports the ALJ's assessment in this regard.

**D.      Moving About and Manipulating Objects**

The ALJ found that E.B. has a less than marked limitation in this domain. (T. 25).  The

Regulations provide:

> Preschool children (age 3 to attainment of age 6). As a preschooler, you should be able to walk and run with ease. Your gross motor skills should let you climb stairs and playground equipment with little supervision, and let you play more independently; e.g., you should be able to swing by yourself and may start learning to ride a tricycle. Your fine motor skills should also be developing. You should be able to complete puzzles easily, string beads, and build with an assortment of blocks. You should be showing increasing control of crayons, markers, and small pieces in board games, and should be able to cut with scissors independently and manipulate buttons and other fasteners.

20 C.F.R. § 416.926a(j)(2)(iii).

The ALJ relied upon the 2008-2009 IEP and noted that E.B. improved in this domain with

services including occupational and physical therapy.  The 2010-2011 IEP further supports the

ALJ's determination as the Committee found that E.B. functions safely and independently at

school and E.B. no longer receives services in this area.  As the evidence as a whole shows that

E.B. has made continuous improvement in this domain, substantial evidence supports the ALJ's

determination that E.B. does not suffer from a marked impairment in this area.  *See Watson ex rel.*

*K.L.W. v. Astrue*, 2008 WL 3200240, at *3 (W.D.N.Y. 2008).

**E.      Caring for Yourself**

The ALJ found that E.B. has a less than marked limitation in this domain.  The

Regulations provide:

> Preschool children (age 3 to attainment of age 6). You should want to take care of many of your physical needs by yourself (e.g., putting on your shoes, getting a snack), and also want to try doing some things that you cannot do fully (e.g., tying your shoes, climbing on a chair to reach something up high, taking a bath). Early in this age range, it may be easy for you to agree to do what your caregiver asks. Later, that may be difficult for you because you want to do things your way or not at all. These changes usually mean that you are more confident

> about your ideas and what you are able to do. You should also begin
> to understand how to control behaviors that are not good for you (e.g.,
> crossing the street without an adult).

20 C.F.R. § 416.926a(k)(2)(iii).

The ALJ acknowledged plaintiff's allegations that E.B. has frequent toileting accidents at home.  However, while pediatric records confirm these events, the last documented incident occurred in 2008.  Furthermore, the ALJ properly noted that E.B. has never been prescribed any medication for this issue.  Moreover, E.B.'s school records and the teacher questionnaires lack any reference to this problem.  Accordingly, substantial evidence supports the ALJ's determination in this area.

## F.       Health and Physical Well-Being

> Health and physical well-being. In this domain, we consider the
> cumulative physical effects of physical or mental impairments and
> their associated treatments or therapies on your functioning that we
> did not consider in paragraph (j) of this section. When your physical
> impairment(s), your mental impairment(s), or your combination of
> physical and mental impairments has physical effects that cause
> "extreme" limitation in your functioning, you will generally have an
> impairment(s) that "meets" or "medically equals" a listing.

20 CFR § 416.926a(l).  In the domain of health and physical well-being, a marked limitation will be found if the child's impairments cause episodes of illness or exacerbations that result in significant, documented symptoms that occur on a regular basis.  *Surita ex rel. Cifuentes v. Astrue*,  2008 WL 4998426, at *4 (S.D.N.Y. 2008) (20 C.F.R. § 416.926a(e)(2)(iv)).

Here, the ALJ concluded that E.B. has a less than marked limitation in this domain.  The ALJ acknowledged the diagnoses of oppositional defiance disorder, parent-child relational problems and anxiety disorder.  However, the ALJ also noted that there was no evidence of any treatment relating to these diagnoses.  Moreover, while E.B. suffered from seizures in the past, the

last seizure occurred one to two years ago and E.B. is not longer taking medication for this issue

and is not under the care of any specialist including a pediatric neurologist.  (T. 27).

Based upon the record, substantial evidence supports the ALJ's determination in this

regard.  *Williams v. Astrue*,  2012 WL 760738, at*9 (N.D.N.Y. 2012) (the plaintiff did not suffer

from a marked limitation with respect to health and well-begin because anxiety/depression is not

treated with any medication).

## IV.    Credibility

Plaintiff vaguely argues that her testimony is credible and consistent with the record and

claims that, "the claimant's testimony is entitled to be accorded "great weight".

SSR 96-7p requires ALJs to articulate the reasons behind credibility evaluations:

> The reasons for the credibility finding must be grounded in the
> evidence and articulated in the determination or decision. It is not
> sufficient to make a conclusory statement that "the individual's
> allegations have been considered" or that "the allegations are (or are
> not) credible." ... The determination or decision must contain specific
> reasons for the finding on credibility, supported by the evidence in the
> case record, and must be sufficiently specific to make clear to the
> individual and to any subsequent reviewers the weight the adjudicator
> gave to the individual's statements and the reasons for that weight.

1996 WL 374186, at *4 (S.S.A. July 2, 1996).

As a fact finder, the ALJ is free to accept or reject testimony of a claimant's parent.

*Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988).  A finding that a

witness is not credible must be set forth with sufficient specificity to permit intelligible review of

the record.  *Id*. (citing *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 648 (2d Cir.

1983).  If the child claimant is unable adequately to describe his symptoms, the ALJ must accept

the description provided by testimony of the person most familiar with the child's condition, such

as a parent.  *Jefferson v. Barnhart*, 64 F. App'x 136, 140 (10th Cir. 2003).  In such a case, the ALJ

28

must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying. *Id*. (citation omitted) (holding that the finding that the mother's testimony was, "credible only to the extent that [it was] supported by evidence of record" is "standard boilerplate language" and an insufficient explanation of credibility).

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96–7p, 1996 WL 374186, at *2 (SSA 1996).  One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record. *Id*. at *5.

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject plaintiff's subjective testimony. *Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  An ALJ rejecting subjective testimony must do so explicitly and with specificity

29

to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and activities during the relevant period. *Howe–Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y.2007).

In this case, the ALJ determined that:

> The allegations of the claimant's mother and stepfather have also been given some weight, but the undersigned finds that the evidence fails to support the degree of limitation that they allege. (T. 18).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F. R. § 404.1529(c)(3)(i)-(iv), in assessing their credibility. In the decision, the ALJ summarized plaintiff's testimony and E.B's stepfather's testimony in two detailed paragraphs. The ALJ considered the testimony of plaintiff and determined that the evidence did not demonstrate that the child is as limited as plaintiff contends. Throughout the decision, the ALJ articulated the inconsistencies upon which he relied in discrediting plaintiff's testimony of disabling limitations. *See Randall ex rel. D.M. v. Astrue*, 2011 WL 1226970, at*21 -22  (E.D.Mo. 2011). The ALJ discussed plaintiff's testimony regarding E.B.'s discipline issues and plaintiff's admission that E.B.'s school never reported any disciplinary problems. Moreover, the ALJ noted that plaintiff testified that E.B. had toileting "accidents" last year at home but not at school. However, E.B. was not treated by any physician for this issue nor did she take any medication. The ALJ found "little evidence of treatment for the alleged problem of toileting 'accidents' ". (T. 26). Plaintiff alleged that E.B. continues to have seizures when she has a fever. However, the ALJ noted that E.B.'s last seizure was one to two

years ago and further, that plaintiff admitted that E.B. has not been treating with any specialist for this condition and is not taking any medication for the condition. (T. 27).  The ALJ acknowledged plaintiff's testimony that E.B. focuses only on television; will "run away" from plaintiff in public; has few friends; does not participate in after school activities; and that she "barely eats".   The ALJ noted, however, that E.B.'s medical records contain no documentation of these issues and while some discipline issues were discussed in school records, they were not as severe as alleged.

Upon review of the record, the Court finds that the ALJ's assessment of plaintiff's credibility is supported by substantial evidence including the objective medical evidence, school reports and teacher questionnaires.  The ALJ complied with the Regulations and articulated the inconsistencies upon which he relied in discrediting the testimony of disabling impairments.  Because substantial evidence in the record supports this finding, the Court will not substitute its judgment for the ALJ, who was in a better position to assess credibility.  Accordingly, remand on this issue is not warranted.  *See Scott ex rel. McQuarters v. Astrue*, 2010 WL 750062, at *3-4 (W.D.Mo. 2010).

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with the above; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated:  June 25, 2012
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

31